NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARBARA KILLIAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-4902 (GEB) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| JOHNSON & JOHNSON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**BROWN, Chief Judge**

This matter comes before the Court upon Barbara Killian's ("Plaintiff" or "Killian") motion to dismiss the counterclaims of Johnson & Johnson ("Johnson & Johnson") and the Trustees of the Pension Committee of the Johnson & Johnson Choices Long Term Disability Plan ("the Pension Committee") (collectively, "Defendants"). The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant in part and deny in part the motion.

**BACKGROUND**

The facts of this case have already been addressed in this Court's January 29, 2008 Opinion. For the sake of clarity, the Court will repeat them here. On August 10, 2007, Plaintiff Barbara Killian ("Plaintiff" or "Killian") filed a complaint ("the Complaint") in the Superior Court of New Jersey, Law division, alleging that Defendant had improperly denied her disability benefits under an employee welfare benefit plan ("the Plan") governed by the Employment

Retirement Income Security Act of 1974 ("ERISA").  (Docket Entry No. 1, Ex. A ("Compl.") at 1-2.)  Ms. Killian claimed that Defendant Johnson & Johnson was her employer and the administrator of the Plan that provided her long-term disability insurance.  (Compl. at 2.)  The Pension Committee of the Johnson & Johnson Long Term Disability Plan, on the other hand, was allegedly the entity responsible for making the ultimate decision on Ms. Killian's disability benefits application.  (*Id*.)

Plaintiff contended that the Defendants' actions amounted to an unlawful deprivation of benefits in violation of ERISA and New Jersey's insurance laws (Count I), a breach of contract (Count II), and a breach of the duty of good faith and fair dealing (Count III).  (*Id*. at 10-12.)  Plaintiff requested a jury trial on these issues and sought the following damages:

> A. Equitable damages, including, but not limited to, long-term disability benefits of which she has been deprived and interest based upon Defendants' unlawful conduct.
> B. Compensatory damages, including, but not limited to, long-term disability benefits of which she has been deprived and interest based upon Defendants' unlawful conduct;
> C. Punitive damages;
> D. Costs of suit, including reasonable attorneys fees;
> E. Such other relief deemed by the Court to be equitable and just as provided by law.

(*Id*. at 11-13.)

The action was removed to this Court on October 10, 2007.  (Docket Entry No. 1.)  On January 28, 2008, this Court dismissed most of Plaintiff's Complaint.  (Docket Entry No. 9.)  On February 26, 2008, Defendants filed counterclaims ("the Counterclaims") against Ms. Killian.  (Docket Entry No. 14.)  Defendants sought: (i) "[e]quitable relief under 29 U.S.C. § 1132(a)(3) in the form of . . . a constructive trust or equitable lien on money 'belonging in good conscience

to the Defendants which can be clearly traced to particular funds or property in Killian's possession . . . .", and (ii) a finding by the Court that Ms. Killian had been unjustly enriched in the amount of $45,439.20 plus interest.  (Docket Entry No. 14 at 15-16.)  Indeed, Defendants submit that on September 29, 2006 Ms. Killian was found to be disabled and eligibile for social security benefits as of March 2004.  (*Id.* at 14-15.)  Defendants claim that the Pension Committee was not notified of this development, and that Ms. Killian was consequently paid both her benefits under the Plan and her Social Security benefits.  (*Id.* at 15.)  She allegedly did so even though "[p]ursuant to the terms and provisions of the Plan, the amount of social security income benefits received by Killian should [have] serve[d] as an offset . . . ."  (*Id.*)  On April 16, 2008, Ms. Killian moved to dismiss Defendants' Counterclaims.   Defendants oppose the motion.

**DISCUSSION**

    **A.**    **Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought.  *Id*. at 1965-66 (abrogating *Conley*'s standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").  In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level.  *Id*. at 1965. The

Case 3:07-cv-04902-GEB-TJB   Document 28   Filed 06/24/08   Page 4 of 10 PageID: 445


issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied* 510 U.S. 1042 (U.S. Jan. 10, 1994) (No. 93-661).

### B. Application

#### 1. ERISA counterclaim

Plaintiff argues that "Defendants' [ERISA] counterclaim should be dismissed[] because Defendants cannot recover in equity funds that are not in Ms. Killian's possession."  (Pl. Br. 10.) Under 29 U.S.C. § 1132(a)(3), "[a] civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan . . . ." 29 U.S.C. § 1132(a)(3).  Equitable relief under the statute "refer[s] to those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256-57 (1993).

Defendants may not rely on 29 U.S.C. 1132(a)(3) "to impose personal liability on [another]  for a contractual obligation to pay money -- relief that was not typically available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002).  Indeed,

"suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are [almost invariably] suits for 'money damages,' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.*, *quoting Bowen v. Mass.*, 487 U.S. 879, 918-919 (1988) (Scalia, J., dissenting); *see also Mertens*, 508 U.S. at 255.

It is not enough, however, for a party to simply characterize its claim for relief as a request for restitution. Indeed, "not all relief falling under the rubric of restitution is available in equity." *Knudson*, 534 U.S. at 212. Thus, "restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case, and whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Id.*, at 213, *quoting Reich v. Continental Casualty Co.*, 33 F.3d 754, 756 (7th Cir. 1994), *cert. denied* 513 U.S. 1152 (Feb. 21, 1995). A plaintiff can only seek restitution (ordinarily in the form of a constructive trust or an equitable lien) "*where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.*" *Knudson*, at 213 (emphasis added).

Accordingly, "where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." *Id.* at 213-14; *see also Unum Life Ins. Co. of Am. v. Laszok*, No. 03-1862, 2005 U.S. Dist. LEXIS 42087, at *8 (D.N.J. Sep. 9, 2005) ("reimbursement of overpaid benefits is recoverable . . .if the fiduciary seeks to recover funds (1) that are identifiable, (2) that belong in good conscience to the fiduciary, and (3) that are within the possession and control of the

5

defendant beneficiary, as opposed to dissipated.") (quotations omitted).  As the Court clarified in *Sereboff v. Mid Atl. Med. Servs*., however, courts may dispense with the traditional "tracing" requirement when the plan at issue  "specifically identifie[s] a particular fund, distinct from the [plan beneficiary's] general assets" and a particular share of that fund to which the plan administrator [is] entitled.  *Sereboff v. Mid Atl. Med. Servs*., 547 U.S. 356, 364 (2006) (quotations omitted).[1]

     First, Plaintiff rejects Defendants' contention that her motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is premature.  (Pl. Reply 5.)  She contends in fact that Defendants have "waived th[e] opportunity [to treat the motion as a Rule 56 motion] by completely failing to serve any discovery demands as authorized by Magistrate Judge Hughes, and [by not seeking any] formal discovery at all during the eight months since Defendants were first served with . . . the Complaint."  (*Id.*)

     Second, Plaintiff claims that Defendants misconstrue the Supreme Court's holding in *Sereboff*.  Plaintiff maintains that "*Sereboff* does not reach as far as Defendants would wish, and most certainly does not support the type of de facto personal liability that Defendants seek to impose on Ms. Killian."  (*Id*. at 7.)  Plaintiff submits that the allegedly overpaid long-term disability benefits that she received under the Plan were deposited directly into her checking account and were spent to pay for her living expenses and bills.  (*Id*. at 4.)  She contends that all those funds have been spent as a result of her having to get by on "poverty-level [social security

---

[1] In *Sereboff*, the plan provided for reimbursement to be derived from "'[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)'--and a particular share of that fund to which Mid Atlantic was entitled–'that portion of the total recovery which is due [Mid Atlantic] for benefits paid.'"  *Sereboff*, 547 U.S. at 364.

disability] payments for . . . years" as well as Defendants' alleged 15-month delay in seeking reimbursement in accordance with the terms of the Plan. (*Id.* at 4-5.) She concludes that Defendants cannot meet the tracing requirement established by the Supreme Court in *Knudson* and submits that she "cannot be compelled in equity to return that which she no longer has." (*Id.* at 10.) In the alternative, Ms. Killian argues that Defendants cannot establish an "equitable lien by agreement" under *Serebroff* because: (i) the long-term disability plan document relied upon by Defendants "is not an agreement among parties but rather Defendant's own statement setting forth the rules by which Defendant's Plan is to be administered", and because (ii) "the plain terms of the Plan fall far short of creating a consensual lien, whether equitable or otherwise." (*Id*. at 11.)

> The Court will begin by turning to the language of the Plan, which provides as follows:
>
>> If payments are made in excess of the benefits payable under the Plan, the Plan has the right to recover these excess payments from the Participant. . . . [T]he Plan Administrator (or the Company, on behalf of the Plan) is empowered to take such other lawful steps as it may deem necessary to recover the excess payments, including, without limitation, to bring suit in a court of law, and/or to deduct the amount of the overpayment from any future compensation or benefits (under this or, to the extent permitted by law, other Employer-sponsored benefit plans) payable to the Participant or their survivors. Such recovered excess payment shall, if originally paid from the Trust, be returned by the Company to the Trust.

(Certification of Randi Knepper ("Knepper Cert.") Ex. A at 24.) It is not clear to the Court that the language of the Plan would allow Defendants to dispense with the traditional "tracing" requirement on the grounds that the Plan "specifically identified a particular fund, distinct from the [plan beneficiary's] general assets". *See Sereboff*, 547 U.S. at 364. That is not to say, however, that the funds sought by Defendants are untraceable and that their ERISA counterclaim

7

must therefore be dismissed under *Knudson*.

Plaintiff repeatedly claims that there is uncontroverted evidence before the Court that the funds awarded to her under the Plan were dissipated long ago, and are therefore untraceable. (Pl. Reply 4, 9.) That is in fact contested by Defendants, who submit that they do not agree with that assertion and have simply not had the opportunity to perform the discovery necessary to properly rebut Plaintiff's allegations.[2]  The Court notes that it ruled on Defendants' motion to dismiss on January 29, 2008 and that Defendants' counterclaims were only filed on February 26, 2008. (Docket Entries No. 9, 14.) Failure to perform the necessary discovery since that time, while unfortunate, cannot be deemed to amount to a waiver of Defendants' right to discovery. Accepting all well-pleaded allegations in the counterclaims as true and viewing them in the light most favorable to Defendants, the Court thus holds that they have set forth sufficient allegations to support their claim that they are entitled to an equitable lien on funds in Ms. Killian's possession.[3] Accordingly, the Court denies Plaintiff's motion to dismiss as to Defendants'

---

[2]   Indeed, Defendants posit that:

> In support of her motion to dismiss . . . Killian relies on contested factual allegations which are not contained in Defendants' pleadings. Furthermore, Killian alleges in her affidavit that these 'facts' are uncontested notwithstanding that Defendants have not yet had the opportunity to conduct discovery concerning these allegations.

(Def. Opp'n 8.)

[3]   The Court finds unconvincing Plaintiff's argument that "Defendants' counterclaims plainly do not allege any kind of lien over Ms. Killian's reinstated LTD benefits." (Pl. Br. 15 n.3.) Defendants' counterclaim for "[e]quitable relief . . . in the form of a constructive trust or equitable lien on money belonging in good conscience to the Defendants which can be clearly traced to particular funds or property in Killian's possession", in light of the Plan's provision regarding recovery of excess payment, *does* set forth such an allegation of a lien. (Docket

ERISA counterclaim.

                2.      Unjust enrichment counterclaim

Plaintiff also argues that Defendants' federal common law claim for unjust enrichment should be dismissed because an ERISA fiduciary seeking to recover an alleged overpayment to a beneficiary is limited to the statutory equitable remedy provided by ERISA. (Pl. Br. 16.) The Court finds Plaintiff's argument persuasive.

Congress has authorized federal courts to create common law in the context of ERISA. *See Plucinski v. I.A.M. Nat. Pension Fund*, 875 F.2d 1052, 1056-1057 (3d Cir. 1989). In fact, "[t]he Third Circuit has held that federal common law may be applied to fill 'minor gaps' in ERISA's text, as long as the federal common law created is compatible with and in furtherance of ERISA's policies." *Laszok*, 2005 U.S. Dist. LEXIS 42087, at *10-11, *citing Luby v. Teamsters Health Welfare and Pension Trust Funds*, 944 F.2d 1176, 1186 (3d Cir. 1991). That holding, however, "exists in the context of the familiar observation that in ERISA Congress has established 'an extensive regulatory network,' and that 'federal courts [should] not lightly create additional [ERISA] rights under the rubric of federal common law.'" *Laszok*, 2005 U.S. Dist. LEXIS 42087 at *11, *quoting Plucinski*, 875 F.2d at 1056.

The Fifth Circuit in *Cooperative Benefit Administrators, Inc. v. Odgen*, 367 F.3d 323, 332 (5th Cir. 2004) reads *Knudson* and *Mertens* to establish that in drafting § 1132(a)(3) to allow only "equitable relief," Congress "specifically contemplated the possibility of extending to plan fiduciaries a right to sue a participant for money damages and chose instead to limit fiduciaries' remedies to those typically available in equity". *Odgen*, at 332. Moreover, the Court explained

---

      Entry 14, at 15-16.)

that since "ERISA's text specifically and clearly addresses the issue whether [a plan fiduciary] has a right to pursue a claim for legal relief against [a plan participant], there is no gap in ERISA on this question and thus no basis for granting [a fiduciary] a federal common law remedy." *Id*. A court of this District held in *Laszok* that the *Odgen* decision was consistent with the Third Circuit's jurisprudence on the issue, including *Plucinsky*. *Laszok*, 2005 U.S. Dist. LEXIS 42087, at *15-16. This Court agrees. Applying the *Odgen* and *Laszok* rationale to the case at bar, the Court holds that ERISA provides Defendants with an appropriate remedy, and must decline Plaintiff's request for the Court to allow its federal common law claim of unjust enrichment in this context. Defendants' unjust enrichment claim is therefore dismissed under Federal Rule of Civil Procedure 12(b)(6).

**CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's motion to dismiss. An appropriate form of Order accompanies this Opinion.[4]

Dated: June 23, 2008

    s/ Garrett E. Brown, Jr.
    GARRETT E. BROWN, JR., U.S.D.J.

---

[4] The Court notes Plaintiff's May 16, 2008 request for Defendants' May 15, 2008 surreply brief to be set aside. The parties' arguments set out in their moving, opposition and reply briefs have allowed the Court to reach a decision on Plaintiff's motion without resorting to the parties' later submissions. Plaintiff's request is therefore moot.